**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES of the PIPE FITTERS RETIREMENT FUND, LOCAL 597; BOARD OF TRUSTEES of the PIPE FITTERS WELFARE FUND, LOCAL 597; BOARD OF TRUSTEES of the PIPE FITTERS TRAINING FUND, LOCAL 597; the BOARD OF TRUSTEES of the CHICAGO AREA MECHANICAL CONTRACTING INDUSTRY IMPROVEMENT TRUST; THE PIPE FITTERS' ASSOCIATION, LOCAL 597 U.A.; BOARD OF TRUSTEES of the PIPE FITTERS' INDIVIDUAL ACCOUNT and 401(K) PLAN; and BOARD OF TRUSTEES of the PIPE FITTING COUNCIL OF GREATER CHICAGO, | CIVIL ACTION<br><br>NO.: 10-CV-2246<br><br>JUDGE: PALLMEYER<br><br>MAGISTRATE JUDGE: MASON |
| Plaintiffs/Counter-Defendants, | |
| vs. | |
| MASTER - TECH REFRIGERATION SERVICE, CORP., an Illinois Corporation; | |
| Defendant/Counter-Plaintiffs. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION TO DISMISS COUNTERCLAIM**

NOW COMES the Plaintiffs, BOARD OF TRUSTEES of the PIPE FITTERS RETIREMENT FUND, LOCAL 597, *et al.*, by and through their attorneys, JOHNSON & KROL, LLC, and in support of their Motion to Dismiss Defendant MASTER – TECH REFRIGERATION SERVICE, CORP.'S ("Master-Tech") Counterclaim provide the following Memorandum at Law:

**I. INTRODUCTION:**

On April 13, 2010, the Plaintiffs (also referred to as "Trust Funds") filed their Initial

1

Complaint against Master-Tech for pursuant to Section 502 of ERISA and Section 301 of the Labor-Management Relations Act to collect delinquent fringe benefit contributions. Plaintiffs allege in their Complaint that Master-Tech failed to remit the contractually required contributions on behalf of several covered employees during the period of November 1, 2006 through February 28, 2010. On June 2, 2010, Master-Tech filed an Answer to the Complaint. In addition to its Answer, Master-Tech filed a Counterclaim seeking restitution for alleged overpayments made to the Trust Funds. Defendant's counterclaim is without merit and cannot withstand a Rule 12(b)(6) Motion to Dismiss. Accordingly, Defendant's counterclaim should be dismissed with prejudice.

## II. FACTS

On November 6, 2006, Master-Tech entered into a Subscription Agreement whereby it agreed to be bound by the provisions of the Collective Bargaining Agreement negotiated between the Pipe Fitters Association, Local 597 U.A. (the "Union") and the Mechanical Contractors Association. (*See* Exhibits 1 and 2 of the Complaint [Docket Entry No. 1]). Through the Subscription Agreement and Collective Bargaining Agreement, Master-Tech also became bound by the provisions of the Agreements and Declarations of Trust which created the Trust Funds (hereinafter referred to as the "Trust Agreements"). (Copies of the Trust Agreements were attached to the Complaint as Exhibits 3A, 3B and 3C [Docket Entry No. 1]).

Pursuant to the provisions of the Collective Bargaining Agreement and the Trust Agreements, all signatory employers are required to make monthly reports of hours worked by Covered Employees (hereinafter referred to as "monthly Contribution Reports") and pay contributions to the Trust Funds for each hour worked pursuant to the negotiated rates. The monthly reports and contributions are due on or before the 15th day of the calendar month

following the calendar month during which the hours are performed.

On or about February 26, 2007, the Union and the Mechanical Contractors Association (hereinafter referred to as the "parties"), acting pursuant to the authority granted to them in the Trust Agreements, adopted the First Amendment to the Trust Agreements, instituting a Policy which requires owners and owner's family members that perform covered work to pay contributions based on the greater of 1) the number of hours worked by the owner or owner's family member under the Collective Bargaining Agreement, or 2) 155 hours (hereinafter referred to as the "First Amendment"). The First Amendment became effective July 1, 2007 and was enacted by the parties to protect against owner-operators who failed to report all hours worked by themselves or their family members and instead reported only the minimum number of hours needed to maintain eligibility for health care benefits.

Subsequent to enactment of the First Amendment, Master-Tech submitted Contributions to the Trust Funds consistent with the First Amendment for every month but one during the period of July 1, 2007 through July of 2009. During that time period, employees of Master-Tech, including those covered under the First Amendment, received pension benefits and health and welfare coverage as a result of the contributions submitted to the Trust Funds.

In September of 2009, the Trust Funds notified Master-Tech that an independent auditor would be conducting a payroll compliance audit of Master-Tech's books and records to verify the accuracy of its contribution reports and payments to the Trust Funds. Master-Tech has not submitted Contribution Reports or payments to the Trust Funds since that time. Master-Tech is now challenging the First Amendment on the grounds that the parties were not authorized to enact and enforce the First Amendment. Master-Tech further seeks a refund for all payments made pursuant to the First Amendment for the time period of July 2007 through August 2009,

despite having received health and welfare coverage during that period. Under Seventh Circuit precedent, it is apparent that Master-Tech has failed to allege a claim for which relief could ever be granted. As such, the Counterclaim should be dismissed with prejudice pursuant to Rule 12(b)(6).

### III. STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court assumes all well-pleaded allegations in the Compliant to be true and draws all reasonable inferences in the Plaintiff's favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007); *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 893 (N.D. Ill. 2008). However, legal conclusions are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). In order to survive a Rule 12(b)(6) Motion to Dismiss, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed.R.Civ.P. 8(a)(2)). The plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly et al.,* 127 S. Ct. 1955, 1964 (2007), *citing Papasan v. Allain,* 478 U.S. 265, 286 (1986). Factual allegations must be enough to raise a right to relief from speculative to plausible. *Twombly*, 127 S. Ct. at 1965. Dismissal of an action is warranted if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000).

In addition, a Court should dismiss a complaint if the cause of action is time-barred by a statute of limitations. *See Kamelgard v. Macura*, 585 F.3d 334, 344 (7th Cir. 2009) (holding that the District Court should have dismissed a complaint with prejudice pursuant to Rule 12(b)(6)

4

when it was clear that the claim was time-barred).

## IV. ARGUMENT

This Court should dismiss Master-Tech's Counterclaim for failure to state a claim upon which relief may be granted because: (1) In no possible circumstance could the equities favor a refund to Master-Tech; (2) Master-Tech acquiesced to the increased contribution requirement and retained the benefit of such until it was faced with Plaintiffs' claim for unpaid contributions; (3) Master-Tech did not request a refund from the Trust Funds within the statutorily required timeframe; and (4) the refund request is not yet ripe for the proper review under the arbitrary and capricious standard.

**A.  Pursuant to Rule 12(b)(6), This Court Should Dismiss Master-Tech's Counterclaim Because Under No Set of Facts Proved Consistent With the Allegations in the Complaint Could the Equities Favor a Refund to Master-Tech.**

This Court should dismiss Master-Tech's Counterclaim under Rule 12(b)(6) because under no set of facts proved consistent with the allegations in the Complaint could this Court determine that the equities favor a refund of contributions to Master-Tech. The Seventh Circuit has recognized a federal common law right to restitution for refunds of employer overpayments only where "equities favor it." *See UIU Severance Pay Trust Fund v. Steelworkers Local No. 18-U*, 998 F.2d 509 (7th Cir. 1993) (stating "that ERISA lets courts establish a federal common law governing restitution of mistaken payments because the cause of action we are authorizing is equitable in nature, recovery will not follow automatically upon a showing that the [employer] contributed more than was required but only if the equities favor it"). However, federal restitution claims under ERISA contain certain limitations; in fact, the Trustees "have limited discretion to refund." *Trustees of the Chicago Plastering Institute Pension Fund v. R.G. Construction Services, Inc.*, Case No. 05 C 5669**,** 2009 U.S. Dist. LEXIS 50885, *51 (N.D. Ill. June 16, 2009) *See also Operating Engineers Local 139 Health Benefit Fund v. Gustafson*

5

*Construction Corp.*, 258 F.3d 645, 650 (7th Cir. 2001) ("[M]erely because a payment is made by mistake doesn't give the payor an automatic right to the return of the payment...")..

The Seventh Circuit has established a series of questions to determine whether the "equities favor" restitution: 1) are unauthorized contributions the sort of mistaken payments that equity demands be refunded?; 2) has the plaintiff delayed bringing this action for so long that laches, or some other equitable defense, bars recovery?; 3) has the plaintiff somehow ratified past payments?; and 4) can the unfunded party demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied? *UIU Severance Pay Trust Fund*, 998 F.2d at 510. In the instant matter, under the test devised by the Seventh Circuit in *UIU Severance Pay Trust Fund*, there is no set of facts that would ever equitably favor a refund to Master-Tech.

**1. The contributions submitted by Mater-Tech were not "mistaken".**

The first question under the *UIU Test* is whether the 'unauthorized contributions' are the sort of mistaken payments that equity demands be refunded. *UIU Severance Pay Trust Fund*, 998 F.2d at 510. Here, the contributions submitted by Master-Tech are clearly not the sort of mistaken payments contemplated by the Seventh Circuit in *UIU*. The contributions made by Master-Tech were made pursuant to a written policy enacted by the parties, one of which was the Mechanical Contractors Association, , Master-Tech's bargaining representative. In addition, the amount of contributions paid by Master-Tech are the same as any other Local 597 contractor that chooses to employ family members or owner/operators in a capacity covered by the Collective Bargaining Agreement. Finally, Master-Tech acquiesced to First Amendment for almost three years before challenging its validity. During that time, Master-Tech submitted contributions pursuant to the First Amendment and received benefits from the Trust Funds, such as health and

6

welfare coverage and retirement benefits. There is no question that under the first *UIU factor* the contributions submitted by Master-Tech are not the sort of mistaken payment that equity demands be refunded.

### 2. Master-Tech's delay in challenging the First Amendment bars recovery.

Similarly, under the second *UIU factor* it is clear that Master-Tech's delay in bringing this action favors <u>against</u> a refund of payments to Master-Tech. As previously stated, Master-Tech waited nearly three years before challenging the validity of the First Amendment. In the mean time, other Local 597 signatory employers who employed family members or owner/operators submitted contributions consistent with the First Amendment. Furthermore, the plans have relied on these contributions when projecting various funding levels over the past several years. To require a retroactive refund would severely alter the finances of the Trust Funds. There is no question that such a prejudicial and inequitable result is not the type of result contemplated by the Seventh Circuit in *UIU*.

### 3. Master-Tech ratified past payments.

The third *UIU factor* is whether the claimant has ratified past payments. There is no question that in the instant matter Master-Tech ratified all of its past payments for over three years. Here, the parties enacted the First Amendment, effective July 1, 2007. From that date forward, in all but one of the months at issue, Master-Tech submitted payments pursuant to the First Amendment. During this period, the husband of the owner of Master-Tech remained eligible for healthcare benefits for his family and accrued credit towards retirement benefits. Master-Tech did not bring a claim for the refund of the payments until the Plaintiffs brought an ERISA collection suit against Master-Tech for unpaid contributions. When faced with an ERISA collection action for unpaid contributions, Master-Tech defended on the grounds that the

7

First Amendment was invalid, despite having reaped its benefits for the past three years. This is clearly an attempt by Master-Tech to escape the already acquiesced obligation under the First Amendment, despite having ratified its past payments for over three years.

    **4.    The Trust Funds have not been unjustly enriched at the expense of Master-Tech.**

Finally, the last *UIU factor* is whether the receiving party would be unjustly enriched by the payment. Again, under this last *UIU factor,* equity favors against reimbursement. The contributions paid by Master-Tech clearly do not create an unjust enrichment to the Trust Funds. Instead, the contributions paid by Master-Tech mirror every other Local 597 signatory employer who employed family members or owner/operators during the period of July 1, 2007 through present. In addition, Master-Tech received the benefit of health and welfare coverage and retirement benefits for all of the contributions paid pursuant to the First Amendment. Under no set of facts could the court determine that such a result created an unjust enrichment for the Trust Funds.

Based on the foregoing, it is apparent that equity does not favor a refund of contributions to Master-Tech. The contributions were submitted pursuant to a written policy adopted by the parties , one of which was Master-Tech's own bargaining representative. Furthermore, Master-Tech waited over three years to challenge the First Amendment and received health and welfare coverage during that period. Accordingly, it is clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations" in Master-Tech's counterclaim and the counterclaim should be dismissed with prejudice pursuant to Rule 12(b)(6). *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000).

Additionally, Seventh Circuit precedent requires dismissal because Master-Tech acquiesced to the benefits from the First Amendment until faced with Plaintiffs' Complaint.

**B.        Pursuant to Rule 12(b)(6) ,This Court Should Dismiss Master-Tech's Counterclaim Because Master-Tech Acquiesced to the Benefits from the First Amendment Until Faced with Plaintiffs' Complaint.**

This Court should dismiss Master-Tech's counterclaim against the Plaintiffs because it acquiesced to the benefits from the First Amendment until such time that the Plaintiffs brought their Initial Complaint in this instant matter. The Seventh Circuit has held that a party is precluded from bringing a claim for a refund of ERISA contributions where the party has already received the benefits from the contributions. *Construction Indus. Retirement Fund v. Kasper Trucking*, 10 F.3d 465, 467 (7th Cir. 1993). Under Seventh Circuit precedent, litigants are precluded from bringing refund claims for alleged overpayments where the party received the benefit from the contributions that were allegedly overpaid. *Id.* The court reasoned that it was inequitable to allow a claim for restitution once the benefits had already been received by the litigating party. *Id.*

The Seventh Circuit emphasized this rule of law in *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction*, 258 F.3d 645, 649 (7th Cir. 2001), where the Court held that the defendant was precluded from bringing a claim for a refund of an alleged overpayment because it had acquiesced in light of the new contribution rates and continued to submit reports and payments pursuant to the new rates. The defendant was also precluded because it received the benefit of the contributions during that period and was only bringing a claim for the alleged overpayments when faced with a claim for unpaid contributions, similar to the Plaintiffs' original claims in this instant matter. *Id.*

Additionally, in *Construction Indus. Retirement Fund v. Kasper Trucking,* 10 F.3d 465, 467 (7th Cir. Ill. 1993), the Court held that it would be inequitable to refund the employer for the alleged overpayments because the employer's employees had received the benefits associated

with the overpayments, i.e., the employees received additional healthcare benefits due to the employer's overpayments.

Here, the parties adopted the First Amendment, effective July 1, 2007. From that date, in all but one of the months, Master-Tech submitted payments pursuant to the First Amendment for the period of July 2007 through July 2009 for the husband of Master-Tech's owner. Not so coincidentally, Master-Tech did not bring a claim for the refund of the payments until the Plaintiffs brought a claim against it for unpaid contributions. Similar to the Defendant in *Gustafson Construction*, this is clearly an attempt by Master-Tech to escape the already acquiesced obligation under the First Amendment. During this period, the husband of the owner of Master-Tech remained eligible for healthcare benefits for his eligible dependents and accrued credit towards retirement benefits. Furthermore, Master-Tech fails to allege that the equities favor a refund of the alleged overpayments, as required by ERISA § 403(c)(2)(A)(ii).

Accordingly, Master-Tech has not presented a claim for any plausible right to relief. Because Master-Tech has not alleged that the equities favor the return of the money, and the fact that it retained the benefit of the alleged overpayments, this Court should dismiss the Counterclaim for failure to state a claim upon which relief may be granted.

C. **The Court Should Dismiss Master-Tech's Counterclaim Because Master-Tech did not Request a Refund Within Six Months of Determining the Contribution Was Made By a Mistake.**

This Court should dismiss Master-Tech's Counterclaim because Master-Tech failed to comply with the requirements of ERISA § 403(c)(2)(A)(ii). ERISA § 403(c)(2)(A)(ii) permits the refund of employer contributions "within 6 months after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C. § 1103(c)(2)(A)(ii). In *Trustees of the Chicago Plastering Institute Pension Fund v. R.G. Construction Services, Inc.*, Case No. 05 C 5669**,** 2009 U.S. Dist. LEXIS 50885, *53 (N.D. Ill. June 16, 2009), a case with the same initial

cause of action and counterclaim as in this matter, the Court held that the Defendant's counterclaim was inappropriate because the defendant failed to request a refund within six months and failed to request a refund from the Trustees, as is required by ERISA § 403(c)(2)(A)(ii).

Consistent with the Court's opinion in *R.G. Construction*, Master-Tech's Counterclaim should be dismissed because it failed to request the refund directly from the Trustees and further failed to submit the refund request within six months of discovery. Pursuant to *R.G. Construction* and ERISA § 403(c)(2)(A)(ii), Master-Tech must request a refund within six months of the alleged overpayments. Here, Master-Tech is seeking a refund of overpayments made during the period of November 2006 through July 2009. If Master-Tech had really believed it submitted payments by a mistake of law or fact, it should have requested a refund from the Trustees within six months of July 2009, which would have been January 2010 at the latest. However, Master-Tech failed to initiate a refund request by January 2010, and thus, failed to comply with ERISA § 403(c)(2)(A)(ii).

Accordingly, because Master-Tech has not requested a refund from the plan administrator and more than six months has passed since the most recent alleged overpayment was made, this Court should dismiss Master-Tech's counterclaim with prejudice.

**D.     The Court Should Dismiss Master-Tech's Counterclaim Because the Trustees Neither Accepted Nor Rejected A Request for Refund and Such a Non-Decision Cannot Be Reviewed Under the Arbitrary and Capricious Standard of Review.**

This Court should dismiss Master-Tech's Counterclaim because it failed to request a refund from the Trustees and, as such, this Court cannot review the Trustees' non-decision under an arbitrary and capricious standard of review. In *Central States, Southeast & Southwest Areas Pension Fund v. Gateway Foods of Twin Ports*, 951 F. Supp. 732, 736 (N.D. Ill. 1996), the Court held that after the Trustees rejected the request for refund, the Court could not overturn the decision to reject "absent a showing that the [Trustees'] decision was arbitrary and capricious."

11

Under this standard, the Trustees' decision will not be overturned if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem." *Militello v. Central States, Southeast & Southwest Areas Pension Fund*, 360 F.3d 681, 685-86 (7th Cir. 2004).

Here, the Trustees have not been given the opportunity to either reject or accept Master-Tech's request for a refund.[1] Accordingly, this Court cannot review a non-decision under an arbitrary and capricious standard. As a result, this Court should dismiss Master-Tech's Counterclaim because it is not yet ripe for review.

## V. CONCLUSION

Due to Master-Tech's failure to properly plead a claim upon which relief may be granted, the Plaintiffs respectfully request that this Court dismiss Master-Tech's Counterclaim with prejudice.

Respectfully submitted,

**TRUSTEES OF THE PIPE FITTERS' RETIREMENT FUND, LOCAL 597** *et al.*

By: /s/ Jeffrey A. Krol - 6300262
One of Plaintiffs' Attorneys

JOHNSON & KROL, LLC
300 South Wacker Drive, Suite 1313
Chicago, IL 60606
(312) 372-8587

---

[1] The Trustees' decision is entitled to deference because the Plan Documents for the Pipe Fitters' Welfare Fund, Local 597 and the Pipe Fitters' Retirement Fund, Local 597 contain discretionary language. *E.g.* Pipe Fitters' Retirement Fund, Local 597 Plan Document ("The Plan Administrator (the Board of Trustees) have the discretionary decision making authority to interpret the provisions of this Plan and determine eligibility for benefits").

12