# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES of the PIPE FITTERS RETIREMENT FUND, LOCAL 597; BOARD OF TRUSTEES of the PIPE FITTERS WELFARE FUND, LOCAL 597; BOARD OF TRUSTEES of the PIPE FITTERS TRAINING FUND, LOCAL 597; BOARD OF TRUSTEES of the CHICAGO AREA MECHANICAL CONTRACTING INDUSTRY IMPROVEMENT TRUST; THE PIPE FITTERS' ASSOCIATION, LOCAL 597 U.A.; BOARD OF TRUSTEES of the PIPE FITTERS' INDIVIDUAL ACCOUNT and 401(K) PLAN; and BOARD OF TRUSTEES of the PIPE FITTING COUNCIL OF GREATER CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 10 C 2246<br><br>Hon. Michael T. Mason |
| Plaintiffs/Counter-Defendants, | ) ) | |
| v. | ) ) | |
| MASTER-TECH REFRIGERATION SERVICE, CORP., | ) ) ) ) | |
| Defendant/Counter-Plaintiffs. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before the Court is plaintiffs/counter-defendants' motion to dismiss defendant/counter-plaintiff Master-Tech Refrigeration Service, Corp.'s counterclaim [23] and memorandum of law in support thereof [24]. Defendant has filed a response [34] and plaintiffs have filed a reply [40]. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## I. Background

Plaintiffs bring this action pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and § 301 of the Labor Management-Relations Act ("LMRA"), 29 U.S.C. § 185. (Compl. ¶ 1[1].) Plaintiffs include the Boards of Trustees of the Pipe Fitters Retirement Fund, the Pipe Fitters Welfare Fund, the Pipe Fitters Training Fund and the Pipe Fitters Individual Account and 401(k) Plan (collectively, the "Trust Funds"). (*Id.* ¶ 3.) Those Board of Trustees plaintiffs are authorized to administer the Trust Funds, which receive contributions from various employers pursuant to collective bargaining agreements between the employers and the Pipe Fitters Association, Local Union 597 (the "Union"). (*Id.*) Plaintiffs also include the Board of Trustees of the Chicago Area Mechanical Contractors Industry Improvement Trust (the "Industry Fund") and the Board of Trustees of the Pipe Fitting Council of Greater Chicago ("PFCGC"), which are authorized to administer the Industry Fund and the PFCGC, respectively. (*Id.* ¶¶ 5-6.)

According to the allegations of plaintiffs' one-count complaint, defendant Master-Tech Refrigeration Service, Corp. ("Master-Tech") entered into a Subscription Agreement whereby it agreed to be bound by the provisions of the Collective Bargaining Agreement ("CBA") negotiated between the Union and the Mechanical Contractors Association. (*Id.* ¶ 9; *see also* Compl. at Ex. 1 - Subscription Agreement; CBA, Compl. at Ex. 2 - CBA.) Plaintiffs also allege that pursuant to the provisions of the Subscription Agreement and the CBA, Master-Tech became bound by the provisions of the Agreements and Declarations of Trust (collectively, the "Trust Agreements") that

2

created the Trust Funds. (*Id.* ¶ 10.)

Relying on the provisions of the CBA and the Trust Agreements, plaintiffs contend that Master-Tech is required to provide monthly contribution reports of hours worked by "covered employees" and to pay contributions to the Trust Funds, the Industry Fund and the PFCGC for each hour worked at the negotiated rate. (*Id.* ¶ 11.) Plaintiffs further allege that pursuant to the terms of the Trust Agreements, Master-Tech must pay monthly contributions to the Trust Funds for all owners or owners' family members who perform any covered work under the CBA based on the greater of (1) the number of hours worked by the owner or owner's family member under the CBA, or (2) 155 hours (the "155 Hour Rule"). (*Id.* ¶ 12; *see also,* Compl. at Exs. 3A, 3B, and 3C - Amendments to Trust Agreements.) The monthly reports and contributions are due on or before the 15th day of the calendar month following the calendar month in which the work was performed. (Compl. ¶ 12.)

According to plaintiffs' allegations, an audit of Master-Tech's payroll records on October 6, 2009 revealed a deficiency of $6,209.10 in unpaid contributions for the period of November 1, 2006 through June 30, 2009. (*Id.* ¶ 16; *see also,* Audit Report, Compl. at Ex. 4.) Plaintiffs further allege that Master-Tech owes a minimum of $20,897.57 in working contractor contributions under the terms of the Trust Agreements. (Compl. ¶ 17.) Lastly, plaintiffs allege that Master-Tech failed to submit monthly contribution reports for the period of September 2009 through February 2010, the review of which may reveal additional unpaid amounts. (*Id.* ¶ 18.)

Plaintiffs seek a judgment in their favor consisting of (1) $6,209.10 in deficient payments; (2) $20,897.57 in unpaid working contractor contributions; (3) $2,710.67 in

liquidated damages, as well as $2,027.98 in unpaid interest pursuant to the provisions of the CBA, the Trust Agreements and § 502 of ERISA; and (4) reasonable attorneys' fees and costs. Plaintiffs also seek any other contributions, liquidated damages, attorneys' fees, or auditor fees that may be found due and owing upon further review of Master-Tech's missing contribution reports.

Master-Tech filed its answer denying liability to plaintiffs and also filed a counterclaim [15]. In its counterclaim, Master-Tech alleges the following: at all relevant times Master-Tech was a signatory to a collective bargaining agreement with the Union whereby it made payments for fringe benefit contributions and/or dues to the Trust Funds, PFCGC and the Union. (Countercl. ¶ 8.) With respect to the 155 Hour Rule discussed above, Master-Tech disputes that the plaintiffs "were authorized to enact and enforce the 155 Hour Rule" or that Master-Tech is obligated to pay plaintiffs in accordance with that Rule. (*Id.* ¶ 9-11.)

As such, Master-Tech alleges that any payments Master-Tech made under the 155 Hour Rule were unauthorized and should be returned. According to Master-Tech, it would be "inequitable" to allow plaintiffs to retain such payments. (*Id.* ¶ 12.) Master-Tech further alleges that because it made payments to plaintiffs by mistake, the retention of those payments would also be inequitable. (*Id.* ¶ 13.) Lastly, Master-Tech alleges that plaintiffs were unjustly enriched by the payments made pursuant to the 155 Hour Rule and those made by mistake. (*Id.* ¶ 14.) Based on those allegations, Master-Tech asks the Court to declare the 155 Hour Rule invalid, unenforceable, and/or unauthorized and to order plaintiffs to return to Master-Tech all monies paid under the 155 Hour Rule and all monies paid by mistake, plus interest thereon.

4

Plaintiffs now move to dismiss Master-Tech's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, plaintiffs argue that (1) under no possible circumstances could the equities favor a refund to Master-Tech; (2) Master-Tech acquiesced to the increased contribution requirement and retained its benefit; (3) Master-Tech did not request a refund from the Trust Funds within the statutorily required time frame; and (4) the refund request is not yet ripe for proper review.

**II.    Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). "Plausibility" does not imply that the Court should decide whose version to believe, or which version is more likely than not. *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010). Instead, "a claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference that the opposing party is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. However, when a party's allegations "do not permit the court to infer more than the mere possibility of misconduct," the claim does not satisfy the minimal pleading burden of Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 1950.

**III.    Discussion**

At the outset, we reject plaintiffs' assertion that Master-Tech's counterclaim is not ripe for review because Master-Tech failed to first request a refund directly from the

5

Board of Trustees. Citing *Central States, Southeast & Southwest Areas Pension Fund v. Gateway Foods of Twin Ports*, 951 F. Supp. 732, 736 (N.D. Ill. 1996), plaintiffs argue that because the Trustees were not given the opportunity to either reject or accept Master-Tech's request for a refund, the Court is without a decision to review under the arbitrary and capricious standard of review. *See Twin Ports*, 951 F. Supp. at 736 (noting that because the pension fund gave the Board final authority to determine questions regarding the construction or meaning of the CBA, the Board's decision to deny the employer's request for a refund could not be overturned absent a showing that the decision was arbitrary and capricious). In other words, plaintiffs believe that dismissal is warranted because Master-Tech failed to exhaust its administrative remedies before seeking relief from this Court. Plaintiffs further contend that Master-Tech's failure to initiate a refund request within six months of discovering the mistaken payments violates § 403(c)(2)(A)(ii) of ERISA.[1]

As Master-Tech properly notes, *Twin Ports* does not stand for the proposition that an employer must first request a refund from the Trustees before seeking restitution in a court proceeding. Instead, in that matter, the employer chose to request a refund and the Court reviewed the Board's denial of that request. Master-Tech's failure to follow a similar procedure here, however, does not prove fatal. The application of the administrative exhaustion doctrine is within the sound discretion of the District Court. *Central States, Southeast & Southwest Areas Pension Fund v. Grosbeck*, No. 99 C

---

[1] Section 403(c)(2)(A)(ii) allows for the return of employer contributions made by mistake of law or fact "within 6 months after the plan administrator determines that the contribution was made by such a mistake." 29 U.S.C.A. § 1103(c)(2)(A)(ii).

1447, 2000 WL 246249, at *2 (N.D. Ill. Feb 24, 2000) (*citing Central States, Southeast & Southwest Areas Pension Fund v. Howard Baer, Inc.*, 753 F. Supp. 241, 245 (N.D. Ill. 1991); *Powell v. A.T. & T. Commc's, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991). While the exhaustion requirement is supported by the strong federal policy of encouraging private resolution of ERISA-related disputes, an exception to the requirement exists where the participation in administrative remedies would be futile. *Grosbeck*, 2000 WL 246249, at * 2; *Steiner v. Central States, Southeast & Southwest Areas Pension Fund*, No. 95 C 687, 1995 WL 399517, at **7-9 (N.D. Ill., June 29, 1995).

Here, requiring Master-Tech to formally request a refund at the administrative level from the very Trustees who initiated this litigation against Master-Tech for unpaid contributions would be futile. We note that other courts have reached the same conclusion under similar circumstances. See *Grosbeck*, 2000 WL 246249, at *2 (declining to apply the exhaustion doctrine where "the Fund obviously already decided (because it filed this lawsuit) that [counter-claimant] owes the Fund money and not the other way around"); *Central States, Southeast & Southwest Ares Pension Fund v. Hoosier Dairy, Inc.*, No. 09 C 3795, 1990 WL 205861, at *3 (N.D. Ill. Dec. 7, 1990) (noting that "[i]t does not make sense to require Hoosier to formally request a refund of past contributions from the very same trustees who are presently suing Hoosier for continued contributions."); *Alvan Motor Freight, Inc. v. Trs. of Cent. States, Southeast & Southwest Areas Pension Fund*, Nos. 5 C 125, 06 C 809, 2007 WL 6942283, at *3 (W.D. Mich. Dec. 19, 2007) (finding that "dismissing the [counterclaim] and requiring [counter-claimant] to exhaust administrative remedies would be both futile and inefficient."). Thus, we will not dismiss the counterclaim based on Master-Tech's failure

7

to first request a refund from the Board of Trustees.

Similarly, we reject plaintiffs' argument that Master-Tech's violation of the six-month statutory limitation for refunds set forth in § 403(c)(2)(A)(ii) requires dismissal of the counterclaim. As discussed in more detail below, Master-Tech's counterclaim arises under the federal common law right to restitution of mistakenly paid employer contributions. *See UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 512 (7th Cir. 1993). Plaintiffs have failed to provide any authority requiring an employer to assert a common law right to restitution within the six-month statutory time frame.

We now turn to plaintiffs' remaining arguments. First, plaintiffs do not dispute that the Seventh Circuit recognizes a common law right to restitution for employer overpayments, even though ERISA does not explicitly create such a right of action. *See UIU Severance,* 998 F.2d at 512 (7th Cir. 1993) ("[W]e believe that recovery of contributions mistakenly made can be attempted under a federal common-law theory of restitution.") (internal citations omitted); *see also Construction Indus. Ret. Fund of Rockford, Ill. v. Kasper Trucking, Inc.*, 10 F.3d 465 (7th Cir. 1993). Instead, plaintiffs contend that "under no set of facts proved consistent with the allegations in the [counterclaim] could this Court determine that the equities favor a refund of contributions." (Mem. in Support of Mot. to Dismiss at 5.)

Plaintiffs correctly note that because the common law cause of action of restitution is "equitable in nature, recovery will not follow automatically upon a showing that [a party] contributed more than was required but only if the equities favor it." *UIU Severance*, 998 F.2d at 513. To determine if the equities favor recovery under a theory

8

of restitution, courts are directed to consider the following questions: "(1) were the unauthorized contributions the sort of mistaken payments that equity demands be refunded, i.e., was it a good faith mistake or the result of unauthorized activity? (2) has the employer delayed in bringing the action? (3) has the employer somehow ratified past payments? (4) can the employer demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied?" *Trustmark Life Ins. Co. v. Univ. of Chicago Hosp.*, 207 F.3d 876, 883 (7th Cir. 2000) (*citing UIU Severance*, 998 F.2d at 513). In their motion to dismiss, plaintiffs answer each of these questions - in their favor of course - in an attempt to show that there is no set of facts that could support a finding that the equities favored a refund to Master-Tech.

However, plaintiffs' application of the equitable test for restitution is premature. We note, as did Master-Tech, that in answering those questions, plaintiffs rely on factual allegations not contained within the pleadings before this Court.[2] *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) (noting that generally the "consideration of a 12(b)(6) motion is restricted solely to the pleadings..."). Further, the purpose of a motion to dismiss is not to decide the merits of the challenged claims, but to test their sufficiency under the law. *Grosbeck*, 2000 WL 246249, at *2; *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Plaintiffs' analysis is

---

[2] By way of example, plaintiffs rely on the following factual allegations not pled in either Master-Tech's counterclaim or plaintiffs' complaint: "The [155 Hour Rule] ... was enacted by the parties to protect against owner-operators who failed to report all hours worked by themselves or their family members and instead reported only the minimum number of hours needed to maintain eligibility for health care benefits." (Mem. in Support of Mot. to Dismiss at 3); "Master-Tech submitted contributions to the Trust Fund consistent with the [155 Hour Rule] for every month but one during the period of July 1, 2007 through July of 2009." (*Id.*); "[T]he plans have relied on these contributions when projecting various funding levels over the past several years." (*Id.* at 7); "[T]he husband of the owner of Master-Tech remained eligible for healthcare benefits for his family and accrued credit towards retirement benefits." (*Id.*)

9

better left for a dispositive motion on the merits, assuming such a motion could be properly brought consistent with Rule 56's requirement that there be no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  *See Kraft Foods, Inc. Supplemental Benefits Plan I v. Woods*, No. 98 C 7794, 1999 WL 1069247 (N.D. Ill. Nov. 19, 1999) (applying the UIU equities test in the context of a motion for summary judgment).  Plaintiffs' argument that Master-Tech acquiesced to the benefits from the 155 Hour Rule is similarly premature.

Notwithstanding the above conclusions, however, the Court finds that Master-Tech's counterclaim fails to satisfy the pleading requirements set forth in Rule 8.  While recent Supreme Court and Seventh Circuit precedent has not eradicated notice pleading, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Here, as plaintiffs note, Master-Tech's counterclaim is completely devoid of *any* factual allegations to support its claim of restitution for unauthorized and mistaken payments.  Instead, Master-Tech simply asserts legal conclusions without any accompanying factual support.  (*E.g.* "Master-Tech disputes that Plaintiffs/Counter-defendants were authorized to enact and enforce the 155 Hour Rule (Countercl. ¶ 11); "Master-Tech also made payments to Plaintiffs/Counter-Defendants by mistake..." (*Id.* ¶ 13.)).  Such conclusions are insufficient to survive a motion to dismiss.  *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  While Master-Tech further clarifies the basis for its counterclaim in its brief in opposition to the motion to dismiss, a party may not

amend the complaint by way of arguments made in a brief. *See Harrell v. U.S*, 13 F.3d 232, 236 (7th Cir. 1993). Nonetheless, pursuant to Rule 15(a)(2), this Court should "freely give" leave to amend, absent undue delay, undue prejudice, or other circumstances justifying denial. *See also Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787 (7th Cir. 2004). As such, Master-Tech's counterclaim is dismissed without prejudice. Master-Tech is granted leave to amend its counterclaim to assert appropriate factual support for its restitution claim, assuming such support exists.

**IV. Conclusion**

For the foregoing reasons, plaintiffs' motion to dismiss defendant's counterclaim is granted in part and denied in part. Master-Tech's counterclaim is dismissed without prejudice and Master-Tech is granted leave to file an amended counterclaim. Should Master-Tech choose to file an amended counterclaim, it must do so by 1/5/11. Plaintiffs' responsive pleading to that amended counterclaim is due 1/26/11.

ENTERED:

_____

MICHAEL T. MASON
United States Magistrate Judge

Dated: December 8, 2010